## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| SECURITIES & EXCHANGE COMMISSION, | ) ) ) | CASE NO. 8:08CV13 |
| Plaintiff, | ) ) | |
| v. | ) ) | **MEMORANDUM** |
| BRYAN S. BEHRENS and NATIONAL INVESTMENTS, INC., | ) ) ) | **AND ORDER** |
| Defendants. | ) ) | |

This matter is before the Court on Marion Gail Buchanan's claim to a constructive trust in certain receivership funds. Buchanan, Receiver Thomas D. Stalnaker, and various Interested Parties appeared through counsel on December 28, 2011, at 9:00 a.m., before the undersigned for a hearing to consider whether Buchanan was entitled to a constructive trust. Buchanan was present at the hearing and was represented by attorneys Richard P. Jeffries and Andrew D. Strotman. The Receiver was represented by attorney John D. Stalnaker. The Interested Parties were represented by attorneys Patrick E. Brookhouser and Lauren R. Cole.

## BACKGROUND

Thomas D. Stalnaker was appointed Receiver for Defendants Bryan S. Behrens and National Investments, Inc., in order to locate, preserve, and protect assets disgorged from Defendants for eventual return to Defendants' investors. (Filing No. 85.) The Court approved procedures for receiving and handling claims made against the Receivership. (Filing Nos. 112, 113.) Under those procedures, after Stalnaker receives a claim, he determines the validity of the claim, and, if valid, the allowed amount of the claim. He then notifies the claimant of his determination and informs the claimant that "[a]ny disputed

claim shall be submitted to the United States District Court for the District of Nebraska for evidentiary hearing to determine the validity and amount of any claim, under procedures to be determined by the Court."  (Filing No. 112, at ¶ I.)

Stalnaker received a claim from Buchanan asserting that she had priority to $400,000.00[1] located in two Wells Fargo bank accounts held in the name of the Receiver, based on a theory of constructive trust.  Stalnaker determined that Buchanan was not entitled to a constructive trust in those funds.  He based his determination, in part, on an affidavit signed by Buchanan on January 16, 2008 (Filing No. 280-1) ("2008 affidavit"), and on Behrens's affidavit, signed on January 26, 2011 (Filing No. 280-2).  Stalnaker determined that there was no fraud, misrepresentation, or abuse of an influential or confidential relationship because Buchanan's affidavit established that (1) although she had looked to Behrens for advice, she made her own financial decisions, and (2) at the time she loaned Behrens the disputed funds, she knew regulatory authorities were investigating Behrens and National Investments and she made an independent decision to loan him the funds for the purpose of paying his personal and business expenses. Stalnaker also stated that he believed principles of equity supported the distribution of the proceeds among the various claimants.  *Id.*  Buchanan disputes Stalnaker's denial of her claim to a constructive trust.

The Court granted Stalnaker's Motion for Hearing (Filing No. 267) to determine the merits of Buchanan's claim to a constructive trust.  (Filing No. 269.)  Prior to the hearing, the parties had an opportunity to file evidence in the form of affidavits or declarations, and

---

[1]  The sum of $400,000.00 is an approximation of the balance in the Wells Fargo accounts at issue, and the parties agreed that the amount was somewhat over $400,000.00 at the time of the hearing.

2

briefs (Filing Nos. 273, 279, 281), in support of their respective positions. The evidence included Buchanan's 2008 affidavit; one signed by her on December 14, 2011 (Filing No. 274-1) ("2011 affidavit"); Behrens's affidavit; and an affidavit signed by Thomas Dahlk on December 19, 2011 (Filing No. 280-3). Dahlk served as Behrens's lawyer at the time Buchanan signed her 2008 affidavit.

An affidavit signed by Buchanan's counsel on December 16, 2011, was also submitted to the Court. This affidavit identified and authenticated two exhibits attached to the affidavit. First, an email message sent by Dahlk to Buchanan's counsel in March 2008 was attached, stating:

> Of course, the SEC action also frustrated Mr. Behrens' plan to implement a workout plan, which is why Mr. Behrens believes the money in the Wells Fargo account should be returned to Ms. Buchananan.

(Filing No. 274-2, Ex. A.) Second, Dahlk's professional biography was attached. (Filing No. 274-2, Ex. B.)

At the hearing, no request for presentation of live testimony was made. Buchanan was offered the opportunity to testify, and that opportunity was declined.

### STANDARD FOR IMPOSING A CONSTRUCTIVE TRUST

"A constructive trust is a relationship, with respect to property, subjecting the person who holds title to the property to an equitable duty to convey it to another on the ground that his or her acquisition or retention of the property would constitute unjust enrichment." *Eggleston v. Kovacich*, 742 N.W.2d 471, 479 (Neb. 2007) (citing *Trieweiler v. Sears*, 689 N.W.2d 807 (Neb. 2004)); *see also Liken v. Shaffer*, 141 F.2d 877, 879 n.1 (8th Cir. 1944) (discussing constructive trusts and stating "[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the

benefit interest, equity converts him into a trustee."). "An action to impose a constructive trust is an equity action, and the party seeking the remedy of a constructive trust has the burden to establish a constructive trust by clear and convincing evidence." *Hanigan v. Trumble*, 562 N.W.2d 526, 531 (Neb. 1997) (citing *Brtek v. Cihal*, 515 N.W.2d 628 (Neb. 1994); *accord Eggleston*, 742 N.W.2d at 479. Under this clear and convincing evidence standard, the party seeking to impose a constructive trust must show "that the individual holding the property obtained title to it by fraud, misrepresentation, or an abuse of an influential or confidential relationship and that under the circumstances, such individual should not, according to the rules of equity and good conscience, hold and enjoy the property so obtained." *Eggleston*, 742 N.W.2d at 479 (citation omitted).

"Typically, when a party can trace its assets, that party is entitled to seek a constructive trust . . . on its portion of those funds that remain." *U.S. v. Durham*, 86 F.3d 70, 72-73 (5th Cir. 1996) (citing Restatement (First) of Restitution § 211(1); *Cunningham v. Brown*, 265 U.S. 1, 11 (1924)). In the context of a Ponzi scheme, however, "[d]istrict courts considering how to treat the investors who have bought into such schemes must determine the most equitable remedy, and they are 'vested with broad discretionary power' to do so." *U.S. Commodity Futures Trading Comm'n v. PrivateFx Global One*, 778 F. Supp. 2d 775, 779 (S.D. Tex. 2011) (quoting *SEC v. Forex Asset Mgmt. LLC*, 242 F.3d 325, 331 (5th Cir. 2001)); *see also Liken*, 141 F.2d at 879 n.1 (internal quotations omitted) ("A constructive trust is the formula through which the conscience of equity finds expression."). "When a portion of funds to be distributed from the assets of a receivership estate can be traced, it is permissible to apply tracing; however, it is also permissible to allow a pro rata distribution." *PrivateFx*, 778 F. Supp. 2d at 779 (citing *Durham*, 86 F.3d

4

at 73); *see also Durham*, 86 F.3d at 73 (citing *S.E.C. v. Elliott*, 953 F.2d 1560 (11th Cir. 1993). "[T]he use of a *pro rata* distribution has been deemed especially appropriate for fraud victims of a 'Ponzi scheme.'" *SEC v. Credit Bancorp, LTD.*, 290 F.3d 80, 89 (2d Cir. 2002) (citing *Cunningham*, 265 U.S. at 7-9) (emphasis in original). This is because, "[i]n such a scheme, whether at any given point a particular customer's assets are traceable is 'a result of the merely fortuitous fact that the defrauders spent the money of the other victims first.'" *Id.* (quoting *Durham*, 86 F.3d at 72).

## DISCUSSION

Buchanan asserts that she is entitled to a constructive trust because Behrens obtained the disputed funds by abusing an influential relationship, the funds can be traced, and it would be inequitable for Behrens to retain the benefit of the money he improperly obtained. The Court finds that Buchanan has not satisfied her burden of showing by clear and convincing evidence that the loaned funds were obtained through the abuse of an influential or confidential relationship. Even if she had satisfied her burden of showing that the loaned funds were obtained through the abuse of an influential or confidential relationship, she has not satisfied her burden of showing by clear and convincing evidence that the rules of equity and good conscience dictate that she should have priority over the $400,000.00 in disputed funds.

## I. Influential or Confidential Relationship

Buchanan has failed to show by clear and convincing evidence that she loaned Behrens the disputed funds as a result of his abuse of an influential or confidential relationship. Buchanan's 2008 affidavit states that although she had looked to Behrens

for financial advice, she made her own financial decisions.  (Filing No. 280-1, ¶ 4.)  The 2008 affidavit also states that she loaned money to Behrens only after she had been told that regulatory authorities were investigating National Investments and Behrens, and only after obtaining an interest in office equipment through a UCC Financing Statement to secure her loan.  (Filing No. 280-1, ¶¶ 8-12, Ex. B.)  These sworn statements do not suggest that Buchanan was under Behrens's spell, but that she made a knowing and independent decision to loan funds to him.

Buchanan asks the Court to look at her 2011 affidavit instead of her 2008 affidavit. She asserts that the 2008 affidavit, just like her loan to Behrens, was obtained by Behrens through the abuse of his influential relationship with her.  She contends that she simply signed the 2008 affidavit because Behrens asked her to do so and that she was not given the opportunity to edit it or informed that it was the equivalent of in-court testimony.  (Filing No. 274-1, ¶¶ 11, 12, 21.)  She states in her 2011 affidavit that she was unrepresented by counsel at the time she signed the 2008 affidavit and was never advised that she should have a lawyer review the affidavit before she signed it.  (Filing No. 274-1, ¶ 11.)

In Dahlk's affidavit, he states that he spoke to Buchanan about her 2008 affidavit and that Buchanan confirmed its accuracy.  (Filing No. 280-3, ¶ 11.)  Dahlk also states that he tried to make sure she knew her money was at risk and advised her to retain a lawyer before signing the 2008 affidavit, but she told him she did not believe she needed one; she "didn't need the SEC telling her what to do;" she "wanted to help Bryan [Behrens]," and if he didn't pay her back, she would "own him.'"  (Filing No. 280-3, ¶¶ 13, 14, 16).

While the Court gives the affidavit of Behrens very little weight in light of his criminal history and reputation for dishonest behavior, the Court accepts the affidavit of Dahlk as

6

fully credible.  No one involved in this proceeding, including counsel for Buchanan, questioned Dahlk's credibility, his motives, or his reputation for honest and ethical dealing.

Based on the evidence before the Court, Buchanan has failed to satisfy her burden of proving by clear and convincing evidence that she would not have loaned the disputed funds to Behrens but for the abuse of an influential or confidential relationship.

## II.  Equity and Good Conscience

Even if Buchanan had satisfied her burden of showing that the abuse of an influential or confidential relationship caused her to loan the disputed funds to Behrens, she has failed to show by clear and convincing evidence that the rules of equity and good conscience dictate that she should have priority over the disputed funds.  Although the Court has the discretion to trace the funds and distribute them accordingly, the Court is not required to do so.  *PrivateFx*, 778 F. Supp. 2d at 779 (citing *Durham*, 86 F.3d at 73); *see also Durham*, 86 F.3d at 73 (citations omitted); *Liken*, 141 F.2d at 879 n.1.  Instead, the Court has broad discretion to fashion what it deems to be the most equitable remedy.  *See PrivateFx*, 778 F. Supp. 2d at 779.

In her brief, Buchanan argues that equity and good conscience are on her side because it would be inequitable for Behrens to retain the benefit of the money he improperly obtained, and it is irrelevant that the funds are now in the Receiver's hands.  At the hearing, Buchanan also suggested that equity dictates that she have priority over the $400,000.00 because the funds are traceable and she lent the funds after Behrens and National Investments had ceased their business operations.

7

The Court finds Buchanan's arguments unpersuasive.  First, the imposition of a constructive trust requires proof that, without the constructive trust, a party would be unjustly enriched.  Neither Behrens nor the various other victims would be unjustly enriched if the Court denies Buchanan's claim to a constructive trust, because the $400,000.00 will be distributed among the victims, including Buchanan.  Further, "the use of a *pro rata* distribution has been deemed especially appropriate for fraud victims of a 'Ponzi scheme,'" *Credit Bancorp, LTD.*, 290 F.3d at 89 (citing *Cunningham*, 265 U.S. at 7-9) (emphasis in original), and other courts have found pro rata distributions to be equitable even when certain funds were traceable to one victim.[2]

---

[2]*See Durham*, 86 F.3d at 73:

The lower court in this case chose not to impose a constructive trust in [one victim's] favor because it seemed inequitable to allow [the victim seeking the constructive trust] to benefit merely because the defendants spent the other victims' funds first. [The victim seeking the constructive trust] would obtain a preferred claim over funds if the court were to impose the constructive trust. To the district court, all the fraud victims were in equal positions and should be treated as such. We cannot say that the district court's assessment of the facts and the resulting order were an abuse of discretion.

*See Forex*, 242 F.3d at 331 (quoting *Durham*, 86 F.3d at 73)

[T]he district court in this case did not abuse its discretion in . . . determining that it was more equitable to distribute the remaining . . . assets pro rata. The district court carefully considered the Whitbecks' arguments and the position of the other fraud victims. Further, the district court determined that the facts did not support a remedy that would elevate the Whitbecks' claim above the other victims, and accordingly determined that a pro rata distribution would provide a fair and equitable remedy. Thus, the district court "used its discretion in a logical way to divide the money," and, therefore, did not abuse its discretion in approving the plan.

*See PrivateFx*, 778 F. Supp. 2d at 782:

Here, the Global One Investors, like Claremont, stand to receive the bulk of the remaining funds if the court allows the funds from the Global One account to be reserved for the Global One Investors. This would leave the other investors, who were duped just like the Global One Investors, without a significant recovery. It would be inequitable to elevate the position of the Global One Investors over the other investors simply because the defrauders had not depleted the funds in the Global One account before the scheme was stopped.

Second, Buchanan's argument that she lent the funds after Behrens and National Investments had ceased their business operations, is misplaced. Buchanan relied on the Fourth Circuit's decision in *Anderson v. Stephens*, 875 F.2d 76 (4th Cir. 1989), to support this contention. The Fourth Circuit in *Anderson* found that the district court erred when it distributed traceable funds on a pro rata basis when certain investors' funds had been deposited after a court's freeze order. *Anderson*, 875 F.2d at 79. The Fourth Circuit stated that "[b]oth the law and equity dictate that the investors whose checks were deposited after the freeze order are entitled to a full return of their funds." *Id.* The Fourth Circuit found that only "post-freeze" investments would not "be distributed on a pro-rata basis." *Id.* at 81. Although the freeze order in *Anderson* happened to coincide with the cessation of business operations, the Fourth Circuit used the timing of court's the freeze order as the means of differentiating between investors because "[t]he freeze order, in effect, froze the status of the . . . account in an attempt to preserve the status quo of the investors." *Id.* at 80. Here, Buchanan lent Behrens the disputed funds prior to the Court freezing Behrens's and National Investment's funds. Even if Behrens and National Investments had decided to cease their operations, a "status quo" among the investors was not preserved until Behrens's and National Investment's funds had been frozen.

Third, in Buchanan's 2008 affidavit, she requested that Behrens have "access to the funds so he can pay his personal business expenses." (Filing No. 280-1, ¶ 14.) If Behrens had obtained access to the funds and the Court had not provided Buchanan with the protection of the Receivership, it is likely that all the disputed funds would be gone. With

the protection of the Receivership, Buchanan will receive her ratable share of the disputed funds.

Fourth, Buchanan has received the benefit of being treated as one of Behrens's creditors with priority in the property covered by the UCC security agreement she obtained in connection with her loan to Behrens, but she has received the benefit of being treated as a victim of the Ponzi scheme for purposes of distributions of cash.  As she acknowledged at the hearing, if she were treated as a creditor, her claim to funds in the Receivership would be given a lower priority than claims of other victims of the Ponzi scheme, and she would be likely to recover no portion of the disputed funds.

Finally, in some respects, Buchanan's circumstances merit less sympathy than those Behrens's other victims.  Unlike the other victims, Buchanan had knowledge, or at least notice, that Behrens and National Investments were under investigation before she loaned the disputed funds.

As a result, Buchanan has not met her burden of showing by clear and convincing evidence that the rules of equity and good conscience weigh in favor of the imposition of a constructive trust.

Accordingly,

IT IS HEREBY ORDERED that Marion Gail Buchanan's claim to a constructive trust in the $400,000.00 in disputed funds located in the Wells Fargo Bank accounts is denied.

DATED this 29th day of December, 2011.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge

10